T.C. Memo. 2007-135


UNITED STATES TAX COURT


MORTON AND ANNE KWESTEL, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 8888-05.                    Filed May 30, 2007.


Morton and Anne Kwestel, pro sese.

<u>Joseph J. Boylan</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

SWIFT, <u>Judge</u>:  Petitioners seek administrative costs under Rule 271 and section 7430(f)(2).

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.

The issue for decision is whether petitioners are entitled to recover from respondent $7,253 in administrative costs relating to petitioners' claim for refund of $13,769 in overpaid 2001 Federal income taxes. Hereinafter, all references to petitioner in the singular are to petitioner Morton Kwestel.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

At the time the petition was filed, petitioners resided in Rockaway, New Jersey.

In 2001 petitioner converted a traditional IRA into a Roth IRA under section 408A(d)(3).

For 2001, petitioners timely filed their joint Federal income tax return and paid the tax shown due thereon. On their return as filed, petitioners included in income the $55,065 in accumulated untaxed IRA earnings.[1]

On October 14, 2002, petitioner timely reversed the conversion of his Roth IRA back into a traditional IRA under section 408A(d)(6).[2]

---

[1]Under sec. 408A(d)(3)(A) and (C), upon conversion of a traditional IRA into a Roth IRA, the amount of untaxed earnings in the IRA is includable in the taxpayer's taxable income in the year of the conversion.

[2]Under sec. 408A(d)(6), a conversion of a traditional IRA into a Roth IRA may be reversed so long as the transfer of funds reversing the conversion is completed by the tax return filing
(continued...)

On October 29, 2002, because of the reversal of the conversion of his IRA account back into a traditional IRA and because petitioner no longer had an obligation to report in his 2001 income the earnings from his IRA, petitioners filed with respondent an amended 2001 joint Federal income tax return reflecting gross income less the $55,065 in 2001 IRA earnings. This reduction in income created a $13,769 tax overpayment that petitioners claimed as a refund (refund claim).

On July 24, 2003, in response to questions about petitioners' refund claim, petitioner met with respondent's Compliance Division officer and her supervisor. Both of respondent's employees erroneously informed petitioner that petitioner's reversal of his IRA account back into a traditional IRA was untimely and therefore that petitioners' refund claim would be disallowed.

Also on July 24, 2003, respondent's Compliance Division mailed to petitioners a claim disallowance letter disallowing petitioners' refund claim and stating that petitioners could appeal the disallowance to respondent's Appeals Office.

On September 4, 2003, petitioners' accountant requested from respondent's National Office of Chief Counsel a determination as to whether petitioners, on their amended 2001 tax return, timely

---

[2](...continued)
due date (including extensions) for the year in which the conversion took place.

and properly treated under section 408A(d)(6) petitioner's IRA earnings as not includable in petitioner's 2001 income.

On September 17, 2003, respondent's Compliance Division mailed to petitioners a certified formal disallowance letter disallowing petitioners' $13,769 refund claim for 2001.

On December 16, 2003, in response to petitioners' accountant's September 4, 2003, letter, the Employee Plans Technical Branch of respondent's National Office faxed to petitioners' accountant a letter indicating that petitioner was to be treated as timely reversing the conversion of his traditional IRA into a Roth IRA.

On December 18, 2003, petitioners filed with respondent a duplicate 2001 amended Federal income tax return, attaching to this return a copy of the Employee Plans Technical Branch December 16, 2003, favorable letter.

On April 2, 2004, respondent's Compliance Division mailed to petitioners a letter reversing its earlier position and allowing in full petitioners' $13,769 refund claim. On May 24, 2004, respondent mailed to petitioners a check in the amount of $14,921 consisting of petitioners' claimed tax refund plus interest.

On or about August 1, 2004, petitioners mailed to respondent their claim under section 7430 for $7,253 in administrative costs relating to their attempt to resolve the question as to the taxability of their IRA conversion and the reversal thereof.

On April 13, 2005, respondent's Appeals Office notified petitioners of respondent's disallowance of petitioners' $7,253 claim for administrative costs.

In the notice, respondent explained that, among other reasons, because respondent had not issued an Appeals Office notice of decision or a notice of deficiency for 2001 relating to petitioners' $13,769 tax refund claim, petitioners could not be treated as a prevailing party under section 7430 and therefore that petitioners were not entitled to administrative costs.

OPINION

Generally, under section 7430 Congress has provided that taxpayers may recover from respondent costs relating to administrative proceedings in which the taxpayers substantially prevail. Section 7430(a) provides as follows:

> SEC. 7430(a). In General.--In any administrative or court proceeding which is brought by or against the United States in connection with the determination, collection, or refund of any tax, interest, or penalty under this title, the prevailing party may be awarded a judgment or a settlement for--
>
> > (1) reasonable administrative costs incurred in connection with such administrative proceeding within the Internal Revenue Service
> > * * *

In section 7430(c)(2), administrative costs are defined to include costs incurred on or after the earliest of the following: (1) The date on which the taxpayer receives from respondent's

Appeals Office a notice of decision, (2) the date of respondent's notice of deficiency, or (3) the date respondent mails a first letter of proposed deficiency giving the taxpayer a right to protest to respondent's Appeals Office (commonly referred to as a 30-day letter).  The flush language of section 7430(c)(2) provides as follows:

> Such term [administrative costs] shall only include costs incurred on or after whichever of the following is the earliest:  (i) the date of the receipt by the taxpayer of the notice of the decision of * * * [respondent's Appeals Office]; (ii) the date of the notice of deficiency; or (iii) the date on which the 1st letter of proposed deficiency which allows the taxpayer an opportunity for administrative review in * * * [respondent's Appeals Office] is sent.

Because respondent's first letter of proposed deficiency (i.e., a so-called 30-day letter) typically is mailed to a taxpayer by respondent's Examination Division prior to any contact between the taxpayer and respondent's Appeals Office, Congress clearly contemplated that under section 7430(c)(2) taxpayers would be able to recover <u>administrative</u> costs independently of any actual subsequent court litigation and independently of any claim for recovery of litigation costs.

Also applicable, however, to a claim for reimbursement of administrative costs under section 7430, is the requirement that a taxpayer must qualify as a "prevailing party".  Sec. 7430(a). For a taxpayer to qualify as a prevailing party, respondent's

"position" must not have been substantially justified.  Sec. 7430(c)(4)(A) and (B).

Under section 7430(c)(7)(B), respondent's position that is to be evaluated as to the justification therefor is identified as the position respondent takes in the administrative proceeding as of the earlier of either the date of receipt by the taxpayer of respondent's Appeals Office's notice of decision or the date of mailing to the taxpayer of respondent's notice of deficiency (i.e., no mention is made in section 7430(c)(7)(B) of the date of respondent's 30-day letter).

Because of the more restrictive language of section 7430(c)(7)(B), we have held that a taxpayer cannot be treated as a prevailing party under section 7430 where respondent is treated as never having adopted a "position" in an Appeals Office notice of decision or in respondent's notice of deficiency.  See Rathbun v. Commissioner, 125 T.C. 7, 14 (2005); Fla. Country Clubs, Inc. v. Commissioner, 122 T.C. 73, 87 (2004), affd. 404 F.3d 1291 (11th Cir. 2005).

Because respondent herein issued to petitioners neither an Appeals Office notice of decision nor a notice of deficiency, we cannot consider respondent to have adopted any position for purposes of section 7430.  Petitioners therefore cannot be treated as a prevailing party, and petitioners may not recover their $7,253 in administrative costs.

Petitioners contend that respondent adopted a position in respondent's Compliance Division's September 17, 2003, certified claim disallowance letter.[3]  However, under the plain language of the statute, only respondent's Appeals Office's notice of decision or respondent's notice of deficiency establishes respondent's position for purposes of section 7430.  See Fla. Country Clubs, Inc. v. Commissioner, supra at 86; Wade v. United States, 865 F. Supp. 216, 219 (D.N.J. 1994).  Respondent's September 17, 2003, letter from respondent's Compliance Division is neither and does not establish respondent's position for purposes of section 7430.

Congress considered and decided against changing the definition of the "position" of the government" in section 7430(c)(7) to include positions taken by respondent in a 30-day letter first proposing a tax deficiency.[4]

Under the narrow statutory language of section 7430(c)(7) as written, under respondent's interpretative regulation under

---

[3]Petitioners cite sec. 301.7430-3(c)(2), Proced. & Admin. Regs., to support petitioners' contention that a Certified Claim Disallowance Letter may be treated as a document wherein respondent states his "position" for purposes of sec. 7430 as applied to refund claims.  However, because the cited regulation specifically requires that the notice of claim disallowance be issued by respondent's Appeals Office, the cited regulation does not help petitioners.

[4]See Fla. Country Clubs, Inc. v. Commissioner, 122 T.C. 73, 78-86 (2004) (discussing the legislative history of sec. 7430) affd. 404 F.3d 1291 (11th Cir. 2005).

section 7430 (sec. 301.7430-3(c), Proced. & Admin. Regs.) and under the interpretation placed thereon by the referenced court cases, taxpayers (such as petitioners herein) who do a good job at the administrative level of resolving issues and getting respondent to realize the error of his ways are precluded from recovering administrative costs incurred in achieving those favorable results. To the contrary, taxpayers who do not do as good a job at the administrative level and who receive adverse Appeals Office notices of decision or notices of deficiency, but who later convince respondent to concede issues or who substantially prevail in litigation on the issues, are able to seek a recovery of administrative costs. In effect, taxpayers who do a better job at the administrative level of resolving issues raised by respondent on audit are prejudiced in their ability to recover administrative costs under section 7430.

Although we sympathize with petitioners' situation, the statute, as enacted, is controlling, and our authority is limited. As we stated in Metzger Trust v. Commissioner, 76 T.C. 42, 59 (1981), affd. 693 F.2d 459 (5th Cir. 1982):

> Courts do not have the power to repeal or amend the enactments of the legislature even though they may disagree with the result * * *

Because the issue we address herein disposes of this case in favor of respondent, we need not address either party's further arguments.

To reflect the foregoing,

<u>Decision will be entered for respondent</u>.